1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

GOCE VELJANOSKI, individually and on
behalf of all others similarly situated,

Case No.

11

Plaintiff,

**CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL
SECURITIES LAWS**

12

v.

13
14

JUNO THERAPEUTICS, INC., and HANS E.
BISHOP, individually and on behalf of the
marital community,

Jury Trial Demanded

15

Defendants.

16
17     This is a federal securities class action on behalf of all investors who purchased or

18 otherwise acquired Defendant Juno Therapeutics, Inc. ("Juno" or the "Company") common

19 stock between June 4, 2016 through July 7, 2016 inclusive (the "Class Period"). This action is

20 brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities

21 Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5

22 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.[1]

23
24
25 [1] Plaintiff Goce Veljanoski ("Plaintiff"), by and through his attorneys, alleges the following upon personal
knowledge as to himself and upon information and belief as to all other matters, based upon the investigation
conducted by and through his attorneys, which included, among other things, a review of documents filed by
26 Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), news
reports, press releases issued by Defendants, and other publicly available documents.
27

CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL
SECURITIES LAWS - 1
1095/001/335279.2

1
2
3

## NATURE AND SUMMARY OF THE ACTION

4    1.    Juno is a biopharmaceutical company that is developing cell-based cancer

5  immunotherapies. Its leading product candidate is called JCAR015, which is currently in clinical

6  trials.

7    2.    The Company knows—and has previously admitted—that one of the notable side

8  effects of JCAR015 is "severe neurotoxicity." In May 2016, a patient in the Phase 2 trial of

9  JCAR015—the so-called "ROCKET" trial—died of a cerebral edema (which is, of course, a form

10  of neurotoxicity).

11    3.    Juno knew the patient death was important: it consulted with its Data Safety

12  Monitoring Board ("DSMB") and the Food and Drug Administration ("FDA") about an

13  appropriate response. Yet it failed to tell investors.

14    4.    Instead, in early June, Juno issued a glowing press release about JCAR015 that

15  boasted of "[l]ower side effects in patients with minimal disease at time of CAR T cell infusion"

16  and made partial, misleading disclosures about side effects—revealing that "Grade 3 or higher

17  neurotoxicity was observed in 15/51 (29%) patients" in a Phase 1 trial but failing to disclose the

18  patient death in May.

19    5.    Shortly thereafter, insiders cashed in. Most notably, Defendant Hans E. Bishop,

20  Juno's CEO, sold over $8.6 million worth of shares in June 2016—more than twice the value of

21  his total sales for all of 2015.

22    6.    In late June or early July, two more patients in the ROCKET trial died of cerebral

23  edemas. This caused the FDA to issue a clinical hold and forced Defendants to reveal the truth.

24
25
26
27

1    After admitting the patient death in May and revealing the clinical hold, Juno's stock cratered—

2    falling by more than 30% the day after the corrective disclosure.

3         7.    This is not Bishop's first time in this position. Bishop was fired from his previous

4    position as Chief Operating Officer at Dendreon Corporation, on the heels of investor complaints

5    about management's history of "failing to disclose important info" and "s[elling] big chunks of

6    stock just weeks before … bad news was announced."    This Court has previously held that

7    plaintiffs alleged valid federal securities claims against Bishop and pled a strong inference of

8    scienter regarding misstatements made in his role at Dendreon.

9         8.    History has repeated itself. This lawsuit follows.

10                              **JURISDICTION AND VENUE**

11        9.    The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the

12   Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the

13   SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

14        10.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

15   §1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

16        11.   This Court has jurisdiction over each Defendant named herein because each

17   Defendant is an individual or corporation who has sufficient minimum contacts with this District

18   so as to render the exercise of jurisdiction by the District Court permissible under traditional

19   notions of fair play and substantial justice.

20        12.   Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C.

21   § 78aa and 28 U.S.C. § 1931(b), as the Company has its principal executive offices located in

22   this District and conducts substantial business here.

23        13.   In connection with the acts, omissions, conduct and other wrongs in this

24   Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate

25

26

27

CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL
SECURITIES LAWS - 3
1095/001/335279.2

1   commerce including but not limited to the United States mail, interstate telephone

2   communications and the facilities of the national securities exchange.

3                                                **PARTIES**

4          14.    Plaintiff Goce Veljanoski is an individual residing in Sofia, Bulgaria. Plaintiff

5   acquired and held shares of the Company at artificially inflated prices during the Class Period

6   and has been damaged by the revelation of the Company's material misrepresentations and

7   material omissions.

8          15.    Defendant Juno is a Delaware corporation with its principal place of business in

9   Seattle, Washington. The Company trades on the NASDAQ stock exchange under the ticker

10  symbol "JUNO", and describes itself as a "fully-integrated biopharmaceutical company focused

11  on re-engaging the body's immune system to revolutionize the treatment of cancer" that is

12  "developing cell-based cancer immunotherapies based on our CAR and high-affinity TCR

13  technologies to genetically engineer T cells to recognize and kill cancer cells."

14         16.    Defendant Hans E. Bishop is Juno's President and Chief Executive Officer.

15  Because of his position at the Company, Bishop possessed the power and authority to control the

16  content and form of the Company's annual reports, quarterly reports, press releases, investor

17  presentations, and other materials provided to the SEC, securities analysts, money and portfolio

18  managers and investors, *i.e.*, the market. Bishop authorized the publication of the documents,

19  presentations, and materials alleged herein to be misleading before their issuance and had the

20  ability and opportunity to prevent the issuance of these false statements or to cause them to be

21  corrected. Because of his position with the Company and his access to material non-public

22  information, Bishop knew that the adverse facts specified herein had not been disclosed to, and

23  were being concealed from, the public and that the positive representations being made were

24  false and misleading. Bishop and his marital community are liable for the false statements and

25  material omissions pleaded herein.

26

27

CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL
SECURITIES LAWS - 4
1095/001/335279.2

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## SUBSTANTIVE ALLEGATIONS

I.    **Background of the Company and Its Products**

17.    Juno is a biopharmaceutical company that is focused on using the body's immune system to fight certain forms of cancer.

18.    As the Company explained in its most recent Form 10-K filed February 29, 2016, "[a] central player in cancer immunotherapy is a type of white blood cell known as the T cell. In healthy individuals, T cells identify and kill infected or abnormal cells, including cancer cells." Juno "leverage[s] two technologies—[chimeric antigen receptors or "CARs"] and [T cell receptors or "TCRs"]—to activate a patient's own T cells so that they attack cancer cells. Through genetic engineering, [the Company] insert[s] a gene for a particular CAR or TCR construct into the T cell that enables it to recognize cancer cells."

19.    The particular drug at issue in this case is a clinical stage product candidate called JCAR015, a so-called CAR-T therapeutic. Juno's most recent Form 10-K described JCAR015 as one of the Company's three "most advanced product candidates" (and it was listed as the first of those three candidates). At a June 9, 2016, presentation to the Goldman Sachs 37th Annual Global Healthcare Conference, Bishop described JCAR015 as the Company's "most advanced" product candidate. According to the Company, all three of its leading product candidates—which include JCAR015, JCAR014, and JCAR017— leverage CAR technology to target CD19, a protein expressed on the surface of almost all B cell leukemias and lymphomas.

II.    **Clinical Trials of JCAR015**

20.    According to data available on the Company's website and the U.S. National Institutes of Health's website, ClinicalTrials.gov, Juno has initiated three clinical trials of JCAR015—none of which have yet been completed.

21.    According to ClinicalTrials.gov, the first Phase 1 study of JCAR015—officially titled, "A Phase I Trial of Precursor B Cell Acute Lymphoblastic Leukemia (B-ALL) Treated

CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL
SECURITIES LAWS - 5
1095/001/335279.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1   With Autologous T Cells Genetically Targeted to the B Cell Specific Antigen CD19"—began

2   enrollment in January 2010 and its estimated primary completion date[2] is January 2017.[3]

3       22.     The second Phase 1 study of JCAR015—officially titled, "A Phase I Trial of

4   High Dose Therapy and Autologous Stem Cell Transplantation Followed by Infusion of

5   Chimeric Antigen Receptor (CAR) Modified T-Cells Directed Against CD19+ B-Cells for

6   Relapsed and Refractory Aggressive B Cell Non-Hodgkin Lymphoma"—began enrollment in

7   April 2013 and its estimated primary completion date is April 2017.[4]

8       23.     Finally, the Phase 2 "ROCKET" study of JCAR015—officially titled, "A Phase

9   2, Single-arm, Multicenter Trial to Determine the Efficacy and Safety of JCAR015 in Adult

10  Subjects With Relapsed or Refractory B-Cell Acute Lymphoblastic Leukemia"—began

11  enrollment in August 2015 and its estimated primary completion date was (before the

12  announcement of the clinical hold) December 2017.[5]

13      24.     When Juno launched the ROCKET trial, patients received a preconditioning

14  regimen[6] of treatment with cyclophosphamide (also known as "cy" or "cytoxan"), a powerful

15  chemotherapy. In December 2015, Juno told the life sciences publication, Xconomy, that it would

16  be adding another chemotherapy called fludarabine to all of its clinical trials of CAR-T after data

17  suggesting that this combination (a "flu/cy" combination) had increased efficacy in Phase 1 trials

18  of JCAR014:

> Phase 1 trials, run by Juno collaborator Cameron Turtle of the Fred Hutchinson Cancer
> Research Center in Seattle, showed patients with non-Hodgkin lymphoma and chronic
> lymphocytic leukemia fared better when receiving fludarabine and cyclophosphamide,
> two chemotherapy drugs, before the JCAR014 T cell therapy.

---

[2] An estimated primary completion date is the final data collection date for the primary outcome measure(s).

[3] *See* https://clinicaltrials.gov/show/NCT01044069

[4] *See* https://clinicaltrials.gov/ct2/show/NCT01840566?term=NCT01840566&rank=1

[5] *See* https://clinicaltrials.gov/ct2/show/NCT02535364?term=NCT02535364&rank=1

[6] *i.e.*, treatment prior to receiving the JCAR015 therapy.

CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL
SECURITIES LAWS - 6
1095/001/335279.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Juno chief financial officer Steve Harr told Xconomy the double dose of chemo would be applied "broadly across our portfolio, at least in [hematological] malignancies."

"I do not want to minimize the chemo, but it is generally a single course and well tolerated," Harr wrote in an e-mail. "It is something that we want to work to eliminate over time, but [we] do not see it limiting us, at least in the patients we are treating today."

Harr said Juno is also evaluating the impact of the chemo combination on patients in the 90-person Phase 2 trial it recently began with JCAR015, another one of its cell therapies, in adults with acute lymphoblastic leukemia. Juno hopes to use that JCAR015 trial data to ask the FDA for marketing approval.

## III.    A Patient Dies In the ROCKET Trial

25.    As Bishop ultimately admitted in a call with analysts on July 7, 2016, sometime in "May"[7] a patient enrolled in the Phase 2 ROCKET study, who had received a flu/cy preconditioning regimen, died of a cerebral edema. In the July 7, 2016 call, Bishop claimed that, at the time of that first death in May, Juno "along with the FDA and our DSMB [data safety and monitoring board] concluded there were confounding factors and a change in our plans at that time was not warranted." Notably, despite his reference to "confounding factors," Bishop did not claim that anyone—neither the clinical investigator, nor the Company, nor DSMB, nor the FDA—had determined that the death in May was not treatment-related.

26.    When asked, on the July 7, 2016 call, how many patients had been treated in the ROCKET trial, Mark Gilbert (the Company's Chief Medical Officer) stated "We've treated greater than 20 patients overall. Roughly two-thirds have been with cyclophosphamide alone, a third with flu/cy." In other words, seven to eight patients, at most, received the flu/cy treatment. Gilbert also disclosed that "quite frankly, the cerebral edema cases come on quite well rapidly, such that the fatal event is occurring in under a week" and that "[a]ll three patients that had the cerebral edema were quite young. They actually were under 25 years of age."

---

[7] Based on the fact that the patient received fludarabine, Bishop must have meant May 2016, as the Company was not using fludarabine in clinical trials of JCAR015 in May 2015 or earlier.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

27.     Despite considering the patient death in May sufficiently serious to inform the FDA and consult with its DSMB, the Company did not bother to inform investors of the incident.

**IV.     In June, Juno Made Misleading Partial Disclosures About The ROCKET Trial; Failing To Disclose The Patient Death The Prior Month**

28.     Indeed, in early June—*i.e.*, after the patient death in May—Juno released a glowing press release about JCAR015 that made misleading partial disclosures about the product's safety—greatly understating the risk by omitting to disclose the patient death. In relevant part, the June 4, 2016 release stated:

**Juno Therapeutics' Investigational CAR T Cell Product Candidate JCAR015 Shows High Response Rates in Adults with B-cell ALL**

**– Durable responses and survivals observed in subset of patients who do not go to transplant –**

**– Comparable survival outcomes to transplant patients –**

**– Lower side effects in patients with minimal disease at time of CAR T cell infusion –**

SEATTLE--(BUSINESS WIRE)--Jun. 4, 2016-- Juno Therapeutics, Inc. (NASDAQ: JUNO), a biopharmaceutical company focused on re-engaging the body's immune system to revolutionize the treatment of cancer, today announced that encouraging clinical data from JCAR015, a chimeric antigen receptor (CAR) T cell product candidate, support its strategic approach towards the commercialization of its first CAR T therapy. Updated results will be presented today in an oral presentation at the 52nd Annual Meeting of the American Society for Clinical Oncology (ASCO) in Chicago (Abstract #7003, Arie Crown Theater, 4:00 p.m. CT).

"The ongoing efficacy and duration of response for a large percentage of patients, specifically those who do not go on to stem cell transplant, continues to be impressive," said Mark J. Gilbert, M.D., Juno's Chief Medical Officer. "These findings provide us with further confidence about our development strategy and the ongoing Phase II ROCKET pivotal trial."

In the Phase I study, presented by lead investigator Jae H. Park, M.D., of Memorial Sloan Kettering Cancer Center, 51 adult patients with relapsed or refractory (r/r) acute lymphoblastic leukemia (ALL) were treated with either cyclophosphamide or fludarabine/cyclophosphamide followed by an infusion of JCAR015. At the time of treatment, 31 patients had morphologic disease burden and 20 patients had minimal disease burden. Median study follow-up was 8.5 months. Key results include:

CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL
SECURITIES LAWS - 8
1095/001/335279.2

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

- Complete response (CR) was observed in 23/30 (77%) patients with morphologic disease and in 18/20 (90%) patients with minimal disease.

- In patients who achieved a CR and had adequate evaluation for minimal residual disease by flow cytometry or polymerase chain reaction, complete molecular remission was observed in 19/21 (90%) patients with morphologic disease and in 14/18 (78%) patients with minimal disease.

- Median overall survival (OS) for patients with minimal disease treated with JCAR015 was not reached, and that for morphologic patients treated with JCAR015 was 9 months; median OS follow-up for all patients was 13 months.

- Durable responses and survival observed in patients who received JCAR015 were comparable between groups that received a subsequent stem cell transplant and those that did not.

- Severe cytokine release syndrome (sCRS) was observed in 14/51 (27%) patients and Grade 3 or higher neurotoxicity was observed in 15/51 (29%) patients. For patients with minimal disease, 1/20 (5%) patients experienced sCRS and 4/20 (20%) patients had Grade 3 or higher neurotoxicity.

29.     Having made partial disclosures about neurotoxicity side effects—"Grade 3 or higher neurotoxicity was observed in 15/51 (29%) patients" in the Phase 1 trial—and having claimed "Lower side effects in patients with minimal disease at time of CAR T cell infusion," Juno had a duty to tell the whole truth: that a patient had died of a cerebral edema in the ROCKET trial. Both the Phase 1 trial and the ROCKET trial were ongoing at the time of this release, so it is not as though the Company was waiting to give data from a completed trial. It was cherry-picking some promising interim data while withholding news of the patient death.

30.     When this press release was issued, Defendants knew that a patient death from a neurotoxic adverse event would be material to investors and its omission was, therefore, misleading. In its discussion of JCAR015 in the Form 10-K filed February 29, 2016, Juno admits that:

- "The notable side effects of JCAR015 are severe cytokine release syndrome ("sCRS") and *severe neurotoxicity.*"; and

- "Approximately 28% of 46 adult r/r ALL [relapsed/refractory acute lymphoblastic leukemia] patients experienced *severe neurotoxicity*, with a rate of 14% in patients with minimal residual disease and 40% in patients with morphologic disease."

CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL
SECURITIES LAWS - 9
1095/001/335279.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## V.   Bishop Cashes In

31.     In the weeks after the misleading release was issued, Bishop and other Juno insiders sold heavily. The following table shows all transactions for Juno insiders during the Class Period:

| Buy/Sell | Date | Name | Shares | Price /Share | Total Value |
|---|---|---|---|---|---|
| Sell | 6/30/16 | Hans E. Bishop | 108894 | $38.41 | $4,182,110.00 |
| Buy | 6/30/16 | Hans E. Bishop | 44000 | $6.36 | $279,840.00 |
| Sell | 6/30/16 | Hans E. Bishop | 6356 | $39.18 | $249,009.00 |
| Sell | 6/24/16 | Klausner Richard | 12000 | $40.71 | $488,496.00 |
| Sell | 6/9/16 | Hans E. Bishop | 8394 | $47.97 | $402,674.00 |
| Buy | 6/9/16 | Hans E. Bishop | 54000 | $6.36 | $343,440.00 |
| Sell | 6/9/16 | Hans E. Bishop | 16751 | $47.03 | $787,726.00 |
| Sell | 6/9/16 | Hans E. Bishop | 5930 | $48.74 | $289,038.00 |
| Sell | 6/9/16 | Hans E. Bishop | 59675 | $45.80 | $2,732,910.00 |
| Sell | 6/10/16 | Harr Steve | 13948 | $42.89 | $598,160.00 |
| Sell | 6/10/16 | Harr Steve | 16052 | $43.69 | $701,370.00 |

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

32.     In total, Bishop sold over $8.6 million worth of shares in less than a month. That is more than twice the value of Bishop's total sales for all of 2015 (less than $4.2 million):

| Buy/Sell | Date | Name | Shares | Price / Share | Total Value |
|---|---|---|---|---|---|
| Sell | 12/15/15 | Hans E. Bishop | 29,404 | $45.73 | $1,344,760.00 |
| Buy | 12/15/15 | Hans E. Bishop | 54,000 | $6.36 | $343,440.00 |
| Sell | 12/15/15 | Hans E. Bishop | 31,255 | $46.64 | $1,457,760.00 |
| Sell | 12/15/15 | Hans E. Bishop | 30,841 | $44.77 | $1,380,890.00 |

## VI.    Two More Patients Die

33.     At some point during the week beginning June 27, 2016, two more patients in the ROCKET trial died of cerebral edemas. One or both deaths may have occurred before Bishop's large sales on June 30, 2016.

## VII.   The Truth Is Finally Revealed When—And Only When—The FDA Orders A Clinical Hold; Juno's Shares Tumble

34.     Juno was forced to reveal the truth on July 7, 2016, after the FDA ordered a clinical hold of the ROCKET trial. In a press release issued after the close of trading, the Company disclosed the clinical hold and the two patient deaths in June:

> Juno Therapeutics, Inc. (Nasdaq: JUNO), a biopharmaceutical company focused on re-engaging the body's immune system to revolutionize the treatment of cancer, today announced that it has received notice from the U.S. Food and Drug Administration (FDA) that a clinical hold has been placed on the Phase II clinical trial of JCAR015 in adult patients with relapsed or refractory B cell acute lymphoblastic leukemia (r/r ALL), known as the "ROCKET" trial. The clinical hold was initiated after two patient deaths last week, which followed the recent addition of fludarabine to the pre-conditioning regimen.
>
> Juno has proposed to the FDA to continue the ROCKET trial using JCAR015 with cyclophosphamide pre-conditioning alone. In response, the FDA has requested that Juno submit, as a Complete Response to the Clinical Hold: a revised patient informed

CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL
SECURITIES LAWS - 11
1095/001/335279.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

consent form, a revised investigator brochure, a revised trial protocol, and a copy of the presentation made to the agency yesterday. Juno will submit the requested information to the FDA this week.

Juno's trials and plans for its other CD19-directed CAR-T cell product candidates, including JCAR017, are not affected.

35.    In a conference call with analysts later that evening, Bishop revealed the death in May:

[S]ince adding fludarabine to the preconditioning on the ROCKET trial we have seen an increase in the incidence of severe neurotoxicity, which has unfortunately included two patient deaths that occurred last week from cerebral edema that appeared to be treatment-related. After the first of these two deaths, we immediately paused the trial for internal review, and review with our Data Safety Monitoring Board and the FDA.

There was also one previous death from cerebral edema on the trial in May. After review of that event we, along with the FDA and our DSMB, concluded there were confounding factors and a change in our plans at that time was not warranted.

36.    Juno's stock price cratered in the aftermath of these disclosures. After closing at $40.82/share on July 7, 2016, the Company's stock price dropped to $27.81/share on July 8, 2016—a 31.9% drop.

## VIII.    Juno's Management Ranks—Including CEO Bishop—Are Drawn From Dendreon, Where Bishop and Other Dendreon Managers Misled Investors

37.    In the aftermath of the July 7, 2016, disclosure, commentators were quick to point out that Bishop and his management team have a history of misleading investors and cashing in via insider sales before the truth is revealed.

38.    On July 8, 2016, the Boston Globe's online life science news website, Stat News reported that:

Two top executives and dozens of other employees of Juno Therapeutics, the company that on Thursday was forced to halt a clinical trial after three leukemia patients died, are alumni of another biotech company that declared bankruptcy two years ago after disappointing sales of its one product.

CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL
SECURITIES LAWS - 12
1095/001/335279.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

And the roots of both Seattle companies' troubles appear similar to some close observers: a failure to adequately heed the scientific challenges of bringing complicated cancer immunotherapies to market.

"There are echoes here of [the previous company,] Dendreon," said a health care industry analyst who declined to be named because of concerns it would hurt client relationships. "Both companies were willing to move ahead with something when they had only a superficial, almost cartoonish, understanding of how [the experimental therapy] works at the cellular level. And now three people are dead. … It's beyond tragic."

39.     In addition to Bishop, who was Dendreon's Chief Operating Officer, Dendreon alumni in Juno's senior management ranks include Mark W. Frohlich, Juno's Executive Vice President, Portfolio Strategy, who previously served as  Executive Vice President of Research and Development and Chief Medical Officer at Dendreon and Elizabeth Smith, Juno's Senior Vice President, Regulatory and Quality Assurance who previously served as the Vice President of Regulatory Affairs at Dendreon. According to Stat News's analysis "[a]t least 63 Dendreon alumni—including the director of operations, the vice president of regulatory affairs, senior scientists, engineers overseeing quality control, and patient schedulers—joined Juno, according to their LinkedIn profiles." As of December 31, 2015, Juno had 306 employees globally— meaning that Dendreon alumni comprised, at minimum, over 20% of the Company's employees.

40.     As Stat News pointed out, Bishop and Dendreon were previously sued for misleading investors and taking advantage of the inflated stock price through insider sales:

Dendreon won plaudits for developing a prostate cancer "vaccine" called Provenge in which T cells removed from patients were manipulated so they would attack tumor cells, a forerunner of the CAR-T therapy Juno and other companies are developing for several forms of cancer. But Dendreon, as well as the product, soon ran into trouble.

Shareholders alleged that Dendreon executives, including Chief Operations Officer Hans Bishop, who had nonpublic information about Provenge, sold millions of dollars worth of stock in advance of disappointing news and resulting steep price drops, and

CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL
SECURITIES LAWS - 13
1095/001/335279.2

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

that they made false and misleading statements that led investors to think Provenge was more successful than it was. Bishop is now the CEO and president of Juno.

In 2013, Dendreon, Bishop, and two codefendants settled the lawsuit for $40 million without admitting wrongdoing, to eliminate what a company spokesperson at the time called a "potential distraction."

41.    The lawsuit to which the Stat News article refers is *In re Dendreon Corporation Class Action Litigation*, Master Docket No. C11-01291JLR (W.D. Wa.) (the "Dendreon Class Action"), filed in this district. The Consolidated Amended Complaint in the Dendreon Class Action (Docket No. 61, filed Feb. 24, 2012; the "Dendreon Class Complaint") contains detailed allegations—relying in large part on confidential witnesses—showing that Bishop (i) knew of weak demand for Dendreon's lead product, Provenge;[8] (ii) nonetheless made misstatements suggesting that demand exceeded supply;[9] and (iii) cashed in on the inflated stock price by selling 31.5% of his total vested stock holdings during the class period.[10] The Dendreon Class Complaint also noted that Bishop was fired within six months after the misstatements were revealed, on the heels of investor complaints about Dendreon management's history of "failing to disclose important info" and "s[elling] big chunks of stock just weeks before … bad news was announced."[11]

42.    Although the Dendreon Class Action was resolved by settlement before a ruling on the motion to dismiss, a class of Dendreon investors who opted out of the class went forward in a separate suit in this district. *See Bolling, et al. v. Gold, et al.*, No. C13-0872JLR (W.D. Wa.) (the "Dendreon Opt-Out Action"). While that litigation was resolved short of trial, the Court did ultimately hold that Plaintiffs had adequately alleged federal securities claims with a strong inference of scienter against Bishop and other members of Dendreon's management. *See, e.g.*, Dendreon Opt-Out Action, Dkt. No. 112, Order (May 19, 2013) at 12-13 ("Plaintiffs allege in

---

[8] Dendreon Class Complaint ¶¶ 26, 27, 30, 37,

[9] Dendreon Class Complaint ¶¶ 46, 49, 51, 52, 176, 200-202, 204, 210-212, 225-227, 245, 246, and 270.

[10] Dendreon Class Complaint ¶ 155 n.3.

[11] Dendreon Class Complaint ¶ 13.

CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL
SECURITIES LAWS - 14
1095/001/335279.2

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

the TAC that Defendants made affirmative statements concerning the number of infusing sites and these statements allegedly misled investors. (See, e.g., TAC ¶¶ 177, 181 (alleging that on Dendreon's January 7, 2011, conference call, Defendant Bishop stated that Dendreon finished 2010 with "slightly more than [50 sites]," when in reality Dendreon finished 2010 with 83 infusing sites, which is 66% higher than the approximately 50 sites that Dendreon referred to on company conference calls).) As a result of the proposed amendments, Plaintiffs adequately allege that Defendants acted with scienter by concealing from investors the existence of the newly added infusing centers.").

## CLASS ACTION ALLEGATIONS

43.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Juno's common stock between June 4, 2016 and July 7, 2016 inclusive. Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

44.    The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

45.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions that may affect individual Class members include:

a.    Whether Defendants violated the Exchange Act;

b.    Whether Juno omitted and/or misrepresented material facts;

c.    Whether Juno's statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL
SECURITIES LAWS - 15
1095/001/335279.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

d.   Whether Juno knew or recklessly disregarded that its statements were false and misleading;

e.   Whether the price of the Company's stock was artificially inflated; and

f.   The extent of damage sustained by Class members and the appropriate measure of damages.

46.   Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

47.   Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

48.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### FRAUD ON THE MARKET

49.   Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

a.   Juno made public misrepresentations or failed to disclose material facts during the Class Period;

b.   The omissions and misrepresentations were material;

c.   The Company's common stock traded in efficient markets;

d.   The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

e.   Plaintiff and other members of the class purchased the Company's common stock between the time Juno misrepresented or failed to disclose material facts and the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL
SECURITIES LAWS - 16
1095/001/335279.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

50.     At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Juno.

### NO SAFE HARBOR

51.     The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

52.     To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

### LOSS CAUSATION

53.     After the close of trading on July 7, 2016, the Company disclosed, among other things, that, in May 2016, a patient in its ROCKET trial had died of a cerebral edema. This highly material fact had not previously been disclosed to investors, despite the partial disclosures, described above, regarding the ROCKET trial and other adverse events involving neurotoxicity. By the close of trading on July 8, 2016, the Company's stock price had declined by $13.01/share or 31.9%. This decline is directly attributable to the July 7, 2016, corrective disclosure.

CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL
SECURITIES LAWS - 17
1095/001/335279.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

# CAUSES OF ACTION
## Count I
### Violation of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
### (Against Juno)

54.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

55.     During the Class Period, Juno disseminated or approved the false statements specified above, which it knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

56.     Juno violated § 10(b) of the Exchange Act and Rule 10b-5 in that it (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the class period.

57.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Juno's misleading statements.

## Count II
### Violation of § 20(a) of the Exchange Act
### (Against Bishop)

58.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59.     Bishop acted as a controlling person of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of his high-level position at the Company, Bishop had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. Bishop was provided with or had unlimited

CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL
SECURITIES LAWS - 18
1095/001/335279.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

access to the June 4, 2016, press release and other statements alleged by Plaintiff to be false or misleading both before and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)      determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

(b)      awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon.

(c)      awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

(d)      awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL
SECURITIES LAWS - 19
1095/001/335279.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

2      DATED this 12th day of July, 2016.

3                                    TOUSLEY BRAIN STEPHENS PLLC

4                              By:

5                                    Kim D. Stephens, WSBA #11984
                                     kstephens@tousley.com
6                                    Janissa A. Strabuk, WSBA #21827
                                     jstrabuk@tousley.com
7                                    1700 Seventh Avenue, Suite 2200
                                     Seattle, Washington  98101
8                                    Telephone:  206.682.5600
                                     Fax: 206.682.2992
9
                                     *Attorneys for Goce Veljanoski, Plaintiff*
10
     Additional Counsel:
11
     BLOCK & LEVITON LLP
12   Jeffrey C. Block, jeff@blockesq.com (*pro hac vice* motion to be filed)
     Joel A. Fleming, joel@blockesq.com (*pro hac vice* motion to be filed)
13   155 Federal Street, Suite 400
     Boston, Massachusetts 02110
14   (617)398-5600 phone
     (617)507-6020 fax
15

16

17

18

19

20

21

22

23

24

25

26

27

CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL
SECURITIES LAWS - 20
1095/001/335279.2

1

## CERTIFICATE OF SERVICE

2     I hereby certify that on July 12, 2016, I electronically filed the foregoing with the Clerk

3 of the Court using the CM/ECF system which will send notification of such filing to the

4 following:

5     *****

6

7     DATED at Seattle, Washington, this 12th day of July, 2016.

8

9                                         Jainie M. O'Tey
                                          TOUSLEY BRAIN STEPHENS PLLC
10                                        1700 Seventh Avenue, Suite 2200
                                          Seattle, Washington  98101
11                                        Tel:    206.682.5600
                                          Fax:    206.682.2992
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL
SECURITIES LAWS - 21
1095/001/335279.2